JAMES R. PSAKI *v.* JOHN S. KARLTON ET AL.
(AC 26803)

DiPentima, Gruendel and Hennessy, Js.

Argued May 25—officially released August 15, 2006

*Gary S. Klein*, with whom, on the brief, were *Peter M. Nolin* and *Amy E. Souchuns*, for the appellants (defendant Capital Growth of Jacksonville, Ltd., et al.).

*James R. Fogarty*, with whom, on the brief was *Gerald G. Reidy*, for the appellee (plaintiff).

*Opinion*

HENNESSY, J. The defendants Capital Growth of Jacksonville, Ltd. (Capital Growth), and CG of Jacksonville, LLC (CG),[1] appeal from the judgment of the trial

[1] The following were named as defendants in this action: Capital Growth of Jacksonville, Ltd.; CG of Jacksonville, LLC; J.S. Karlton Company of

court rendering partial summary judgment in favor of the plaintiff, James R. Psaki, on his breach of contract claim. On appeal, Capital Growth and CG claim that the court improperly (1) rendered partial summary judgment in favor of the plaintiff, (2) rendered a guaranteed minimum judgment in favor of the plaintiff and (3) denied their motion for reconsideration and reargument. We cannot reach the merits of the claims raised on appeal, however, because the subject of this appeal, the court's granting of the plaintiff's motion for partial summary judgment, did not result in an appealable final judgment, and, thus, this court lacks subject matter jurisdiction. Accordingly, the appeal is dismissed.

The following facts and procedural history are relevant to our discussion. Capital Growth is a limited partnership created under the laws of the state of Florida. CG is a limited liability company created under the laws of the state of Florida. CG is the sole general partner of Capital Growth. The defendant J.S. Karlton Company of Florida, Inc. (Karlton Company), a corporation created under the laws of the state of Florida, is one of the two managers and members of, and has a majority interest in, CG. The defendant Pearl Jacksonville, LLC (Pearl, LLC), is a limited liability company created under the laws of the state of Delaware. The defendant Pearl Jacksonville, Inc. (Pearl, Inc.), is a corporation created under the laws of the state of Delaware. The defendant West Bay Investors, LLC (West Bay), is a limited liability company created under the laws of the state of Delaware. The defendant Continental Asset

Florida, Inc.; Pearl Jacksonville, LLC; Pearl Jacksonville, Inc.; West Bay Investors, LLC; Continental Asset Management; and John S. Karlton. This appeal concerns only count five of the plaintiff's complaint. Count five, a breach of contract claim, was brought against only three of the defendants, Capital Growth of Jacksonville, Ltd.; CG of Jacksonville, LLC; and West Bay Investors, LLC. The court did not render judgment against West Bay Investors, LLC, and therefore only Capital Growth of Jacksonville, Ltd., and CG of Jacksonville, LLC, are parties to this appeal.

Management (CAM) is a corporation created under the laws of the state of Florida. The defendant John S. Karlton (Karlton) is the officer and director of Karlton Company; a manager and member of CG; a limited partner in Capital Growth; the founder of Pearl, LLC, Pearl, Inc., West Bay and CAM; and is an officer and director of Pearl, Inc., and CAM, and owns a majority of their voting shares. The plaintiff is a limited partner in Capital Growth and either a shareholder or member of CG, Karlton Company, Pearl, LLC, Pearl, Inc., West Bay and CAM.

In April, 1997, Capital Growth purchased property known as the Bell South Building (Bell South) in Jacksonville, Florida, for $67 million. In April, 1999, a written agreement of limited partnership (LP agreement) was entered into between CG, as general partner of Capital Growth, and Karlton and the plaintiff, as limited partners of Capital Growth. The LP agreement stated that CG is "vested with the full, exclusive and complete, right, power and discretion to operate manage and control the affairs of Capital Growth." Subsequently, in May, 2004, Bell South was sold for $90.9 million, and it is the plaintiff's share of the proceeds from the sale that is at the center of his action against the defendants.

In May, 2004, the defendants sent the plaintiff a written proposal regarding his share of the proceeds from the sale of Bell South. This proposal calculated the plaintiff's share of the proceeds at $858,965.57 and required him to relinquish all related claims against the defendants. The plaintiff did not accept the terms of the proposal. As a result, the defendants sent the plaintiff a second proposal of $525,475.80. The plaintiff objected to the calculation of the second proposal. The defendants and the plaintiff never reached an agreement, and this action ensued.

The plaintiff's action against the defendants consists of ten counts, including the breach of contract claim

against Capital Growth, CG and West Bay. After incorporating various sections of the complaint, the breach of contract count alleged that "[b]y failing or refusing to distribute to the plaintiff his share of the proceeds of [Capital Growth's] sale of the property and by deceitfully coercing the plaintiff to pay the mezzanine loan assumption fee required to effectuate the sale of the property, [Capital Growth] and [CG] have breached the term of the LP Agreement." On April 25, 2004, pursuant to Practice Book § 17-51, the plaintiff filed a motion for partial summary judgment on the breach of contract count.

In his memorandum of law in support of his motion for partial summary judgment, the plaintiff sought "summary judgment on [the] distributive-share amount to the extent that amount is not in dispute." Specifically, the plaintiff contended "that the amount not in dispute is equal to the defendants' first proposed distribution of $858,965.57, or, in the alternative, to the defendants' revised, proposed distribution of $525,475.80." The defendants opposed the motion for partial summary judgment, arguing that "[a]lthough there appears to be no disagreement among the parties that the plaintiff . . . as a limited partner, is entitled to a portion of these profits, there is a clear disagreement over the partnership agreement and its provisions regarding distribution."

On June 14, 2005, the court granted the plaintiff's motion for partial summary judgment. In its oral decision, the court stated that it did not "know enough about the case to go above the [$525,475.80 proposed distribution]. But [the court] feel[s] comfortable [enough] to grant summary judgment in the amount of $525,475.80 with the clear understanding . . . that the trial will be open as to what, if anything else, is owed by the partnership to the plaintiff." Subsequently, on

July 26, 2005, the defendants filed a motion for reconsideration and reargument, which was denied. This appeal followed. Additional facts will be set forth as necessary.

The dispositive issue on appeal is whether the court's granting of the plaintiff's motion for partial summary judgment resulted in an appealable final judgment. "The subject matter jurisdiction of this court and our Supreme Court is limited by statute to final judgments. General Statutes § 52-263; see generally W. Horton & K. Bartschi, Connecticut Practice Series: Connecticut Rules of Appellate Procedure (2005 Ed.) § 61-1; see also C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 3.1 et seq. Our appellate courts lack jurisdiction to hear an appeal that is not brought from a final judgment. General Statutes § 52-263; see *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). The lack of a final judgment is a jurisdictional defect that mandates dismissal." (Internal quotation marks omitted.) *Gorelick* v. *Montanaro*, 94 Conn. App. 14, 23–24, 891 A.2d 41 (2006).

"A judgment that disposes of only a part of a complaint is not a final judgment. *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, 262 Conn. 240, 246, 811 A.2d 1272 (2002). Our rules of practice, however, set forth certain circumstances under which a party may appeal from a judgment disposing of less than all of the counts of a complaint. Thus, a party may appeal if the partial judgment disposes of all causes of action against a particular party or parties; see Practice Book § 61-3; or if the trial court makes a written determination regarding the significance of the issues resolved by the judgment and the chief justice or chief judge of the court having appellate jurisdiction concurs. See Practice Book § 61-4 (a)." (Internal quotation marks omitted.) *Gorelick* v. *Montanaro*, supra, 94 Conn. App. 31–32. Neither exception applies to the present appeal.

First, the judgment of the court did not dispose of all causes of action brought by the parties. In fact, the judgment did not even dispose of the breach of contract claim. Second, neither the trial court nor this court made any written determination pursuant to Practice Book § 61-4 (a) regarding the significance of the issues presented in this case. Moreover, Practice Book § 61-4 (a) is not applicable because it "applies to a trial court judgment that disposes of at least one cause of action . . . ." Here, it is without question that the court's judgment does not dispose of at least one cause of action. Accordingly, we conclude that this appeal does not fall within either rule permitting an appeal from a judgment on less than all counts of the complaint.

Nonetheless, Capital Growth and CG argue that the judgment of the court is an appealable final judgment as defined by Practice Book § 17-51[2] and, thus, that rule of practice gives us jurisdiction to hear their appeal. Rules of practice, however, "do not ordinarily define subject matter jurisdiction." *State* v. *Carey*, 222 Conn. 299, 307, 610 A.2d 1147 (1992), on appeal after remand, 228 Conn. 487, 636 A.2d 840 (1994). With regard to rules of practice, "General Statutes § 51-14 (a) authorizes the judges of the Superior Court to promulgate rules regulating pleading, practice and procedure in judicial proceedings . . . . *Such rules shall not abridge, enlarge or modify any substantive right nor the jurisdiction of any of the courts.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Carey*, supra, 307. Similarly, in *LaReau* v. *Reincke*, 158 Conn. 486, 492, 264 A.2d 576 (1969), our Supreme Court held that the rules of practice cannot confer jurisdiction on the appellate

---

[2] Practice Book § 17-51 provides: "If it appears that the defense applies to only part of the claim, or that any part is admitted, *the moving party may have final judgment forthwith* for so much of the claim as the defense does not apply to, or as is admitted, on such terms as may be just; and the action may be severed and proceeded with as respects the remainder of the claim." (Emphasis added.) The defendants specifically rely on the "final judgment" language in support of their argument.

courts because appellate jurisdiction stems solely from our constitution and from statutes. We therefore conclude that Capital Growth's and CG's argument that Practice Book § 17-51 gives us jurisdiction to hear their appeal is without merit.

Our aforementioned conclusions, however, do not end our inquiry as to whether the judgment of the trial court is an appealable final judgment. See *State* v. *Curcio*, supra, 191 Conn. 30–31. An otherwise interlocutory ruling can be immediately appealed in two circumstances: (1) when the order terminates a separate and distinct proceeding; or (2) when the order so concludes the rights of the parties that further proceedings cannot affect them. Id., 31. Here, neither prong of the *Curcio* test is satisfied.

First, the judgment of the court did not terminate a separate and distinct proceeding, as it left much of the case still pending before the trial court. In fact, it left much of the cause of action still pending before the trial court. Second, the judgment of the court did not sufficiently conclude the parties' rights as to be appealable pursuant to *Curcio*'s second prong. For an interlocutory order to be appealable under the second prong of *Curcio*, "[t]here must be (1) a colorable claim, that is, one that is superficially well founded but that may ultimately be deemed invalid, (2) to a right that has both legal and practical value, (3) that is presently held by virtue of a statute or the state or federal constitution, (4) that is not dependent on the exercise of judicial discretion and (5) that would be irretrievably lost, causing irreparable harm to the appellants without immediate appellate review." *Sharon Motor Lodge, Inc.* v. *Tai*, 82 Conn. App. 148, 158–59, 842 A.2d 1140, cert. denied, 269 Conn. 908, 852 A.2d 738 (2004). Here, the dismissal of the appeal for lack of a final judgment would not cause Capital Growth and CG irretrievable loss of a recognized constitutional or statutory right, and they

could vindicate their challenge to the partial summary judgment in a later appeal from a final judgment.

Accordingly, the court's granting of the plaintiff's motion for partial summary judgment is not an appealable final judgment and, thus, we lack subject matter jurisdiction to entertain the present appeal.

The appeal is dismissed.[3]

In this opinion the other judges concurred.

---

[3] The plaintiff filed a motion to dismiss this appeal for lack of subject matter jurisdiction on the ground that the appeal is moot. Because we dismiss this appeal for lack of a final judgment, we need not address the motion to dismiss.